**The Honorable Robert S. Lasnik**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE

| | |
|---|---|
| LARRY PIFER and PAMELA PIFER, Husband and Wife,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., a national association, SPECIALIZED LOAN SERVICING LLC, a foreign corporation, NEW PENN FINANCIAL, LLC, d/b/a SHELL POINT MORTGAGE SERVICING, a foreign corporation, and THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-8, a national association.<br><br>Defendants. | CASE: 18-cv-00606-RSL<br><br>RESPONSE & OBJECTION TO BANK OF AMERICA'S MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR:<br>June 15, 2018<br>Without Oral Argument |

COME NOW, LARRY PIFER and PAMELA PIFER, husband and wife, by and through

the undersigned counsel, file this Response and Objection to the Motion to Dismiss brought by

defendant BANK OF AMERICA, N.A. ("BANA").

**FACTS**

BANA admits that it provided the Pifers with a Loan Modification Agreement to sign

RESPONSE/OBJECTION TO MOTION TO DISMISS   1   **BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1   which states positively that BANA is the "Lender." The Loan Modification Agreement specifies

2   that the principal amount is $434,710.30, and the "new interest rates" would increase in steps or

3   2% in years 1-2; 3% in year 4; 4% in year 5 and 4.875% in year 6.( Dkt. 3, FAC, Ex. D, BANA

4   Loan Modification Agreement). Despite the Pifers' full performance of the terms of the Loan

5   Modification Agreement, including making payments in the amount specified for many months,

6   BANA, as Lender, refused to return the fully executed Loan Modification Agreement. Instead,

7   **BANA issued its Notice of Intent to Accelerate dated November 2, 2011** (Dkt. 3, FAC, Ex.

8   E, Notice of Intent to Accelerate). Having received the Notice of Intent to Accelerate, the Pifers

9   believed they had no incentives at all to consider any other offer made by BANA.

10   In January of 2013, BANA sent the Pifers correspondence informing that they have been

11   determined ineligible for a loan modification because the Loan "was previously modified."

12   BANA indicated further that "The Program does not allow more than one modification in 12

13   months or 2 modifications in a 5-year period." (Dkt. 3, FAC, Ex. G, BANA Letter dated

14   1/15/13). Two months later, in March of 2013, BANA sent the Pifers correspondence which

15   states "Congratulations. We have determined that you are eligible for a trial modification."

16   BANA baited the Pifers to make three payments starting April 1, 2013 in the amount of

17   $1968.63, by promising, "we will contact you to discuss the terms of your permanent

18   modification." This amount of the trial payments did not relate to the Loan Modification

19   Agreement, and BANA did not acknowledge the payments that the Pifers made toward the

20   Loan Modification Agreement in 2011 whatsoever (Dkt. 3, FAC Ex. H, BANA Letter dated

21   3/4/13).

22   Within the span of a few weeks, and in contradiction to the first letter offering a trial

23   modification, BANA also sent the Pifers another letter dated March 26, 2013, that reads, "Bank

24

of America previously evaluated your loan for a modification and informed you by a letter dated 9/25/2012 that you were not eligible (Dkt. 3, FAC Ex. I, BANA letter dated 3/26/2013).

Having made payments under the previous loan modification agreement, but not the benefit of acknowledgement by BANA of the receipt of same, or the benefit of a fully executed contract, the Pifers were not able to know what their obligations were and what payment to make on monthly basis going forward. The Pifers continued to make inquiry to BANA as to the situation of the Loan on a continuing basis without the benefit of any truthful information. From the date of their signing of the 2011 Loan Modification Agreement and up until 2018, BANA has never produced a copy of the fully executed agreement or explained the status of said agreement. BANA transferred the Pifer Loan to more than one servicer during the course of the next several years. In late 2016, the Loan was transferred once again to a new servicer, defendant Shell Point. Shell Point issued to the Pifers **a Validating of Debt Notice dated December 8, 2016, identifying "The name of the creditor to whom the debt is owed is Bank of America, N.A**." (Dkt. 3, FAC, Exhibit O, Validation of Debt Notice).

## LEGAL AUTHORITY & ANALYSIS

In ruling on BANA's motion to dismiss under Rule 12(b)(6), this Court analyzes the complaint and takes all allegations of material fact as true and construe[s] them in the light most favorable to the Pifers as the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792

1  F.2d 896, 898 (9th Cir. 1986); *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

**THE PIFERS' CLAIM OF QUIET TITLE AGAINST BANA IS PLAUSIBLY PLEADED**

Under Washington law, an action to quiet title is equitable by nature and granted in resolution of competing claims of ownership. RCW 7.28.010. The Pifers as the owner of record of the property is allowed to compel all those who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination. In their First Amended Complaint, the Pifers assert that BANA asserted itself as the "lender" in the Loan Modification Agreement given to them to sign and that BANA in fact issued a Notice of Intent to Accelerate against them. (Dkt. 3, FAC, para. 11-12. Ex. D & E). Plaintiffs have pleaded that the servicing of the Loan was transferred to SLS and then to Shell Point who in 2018 informed them that "[t]he current owner of this Loan is BONY as trustee for CWABS 2007-8 GR FIXC . . ." (Dkt. 3, FAC, para. 24, Ex. P). Where there is no way for the Pifers to determine whether the "lender" is the same as the "owner," and where loan services are allowed to do whatever they want with borrowers in the context of loss mitigation, a quiet title claim is as good as against BANA as any other entity who has asserted, is asserting, or will assert the right to disturb the Pifers' possession as the record owner of the property before said judgment is granted.

The Pifers allege that in December of 2016, they received a Validating of Debt Notice dated December 8, 2016, identifying "The name of the creditor to whom the debt is owed is Bank of America, N.A." (Dkt. 3, FAC Exhibit O, Validation of Debt Notice). This fact, taken as true, gives rise to their quiet title claim against BANA and dismissal would be inappropriate.

**THE PIFERS' CLAIMS FOR BREACH OF CONTRACT AND BREACH OF GOOD FAITH AND FAIR DEALING AGAINST BANA ARE PLAUSIBLY PLEADED**

1  Where statutes of limitations are to promote fairness, fairness may require that the

2  statutory bar not to be enforced strictly under certain circumstances. *Mont. Pole & Treating*

3  *Plant v. I.F. Laucks and Co*., 993 F.2d 676, 678 (9th Cir. 1993). In particular, the statutory bar

4  should not operate when the plaintiff has no knowledge of the facts essential to the cause of

5  action. *Id*. at 678. "Under federal law [accrual begins] when the plaintiff knows or has reason to

6  know of the injury that is the basis of the action." *N. Cal. Retail Clerks Unions & Food Emp'rs*

7  *Joint Pension Tr. Fund v. Jumbo Markets, Inc.,* 906 F.2d 1371, 1372 (9th Cir. 1990); *Norman-*

8  *Bloodsaw v. Lawrence Berkeley Lab.,* 135 F.3d 1260, 1266 (9th Cir. 1998) (Under the general

9  federal rule, the limitations period begins to run when the plaintiff knows or has reason to know

10 of the injury which is the basis of the action).

11 Without waiving their claim of Quiet Title based on the expiration of the Statute of

12 Limitations, in 2018, through the periodic statements issued by SLS and Shell Point, the Pifers

13 finally discovered for the first time that the defendants were enforcing the terms of the Loan

14 Modification Agreement that they signed, and under which they initially performed.  In all the

15 correspondences BANA issued to the Pifers, it never communicated to the Pifers that the Loan

16 Modification Agreement was valid and enforceable. The opposite occurred; BANA told the

17 Pifers in January of 2013 that they have been determined ineligible for a loan modification and

18 in March of 2013, BANA sent the Pifers a letter which states "Congratulations. We have

19 determined that you are eligible for a trial modification." BANA's communication, for months

20 and years after its failure to return the fully executed Loan Modification Agreement to the Pifers

21 worked only to solidify the Pifers' belief that there was no valid and enforceable loan

22 modification.  BANA's offer of three trial payments starting April 1, 2013 in the amount of

23 $1968.63, and its promise, "we will contact you to discuss the terms of your permanent

24

RESPONSE/OBJECTION TO MOTION TO DISMISS    5    **BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1  modification," proved that BANA did not honor the Loan Modification Agreement that the

2  Pifers signed and returned in 2011(Dkt. 3, FAC, Ex.H, BANA Letter dated 3/4/13).  Shortly

3  after this offer of trial payments, BANA also sent the Pifers another letter dated March 26,

4  2013, that reads, "Bank of America previously evaluated your loan for a modification and

5  informed you by a letter dated 9/25/2012 that you were not eligible (Dkt. 3, FAC Ex. I, BANA

6  letter dated 3/26/2013). Not once did BANA mention to the Pifers of its decision to honor the

7  2011 Loan Modification Agreement.  As a financial institution, BANA has a policy of

8  demanding borrowers to sign loan modification agreements but not returning fully executed

9  contracts to them?  The Pifers' allegations, supported by BANA's own written words,

10 contradict BANA's position that it in fact honored the terms of the 2011 Loan Modification

11 Agreement.

12      BANA breached the Loan Modification Agreement because it transferred the Loan to

13 SLS on the pretense that the Loan was in default while BANA was in fact the defaulting party

14 and not the Pifers. BANA's breach made it impossible for the Pifers to perform their end of the

15 bargain. BANA had an affirmative duty to timely inform the Pifers that the Loan Modification

16 Agreement did not require BANA's signature. In the alternative, if it is in fact BANA's policy

17 not to provide borrowers with a fully executed loan modification agreement, BANA had a duty

18 to inform the Pifers of its policy in a timely manner. Defense counsel's argument contained

19 within the instant Motion to Dismiss—that BANA honored the Loan Modification Agreement

20 all along—is the first that the Pifers have heard about the status of their submission of the

21 Agreement they signed and sent back.

22      What BANA has done to the Pifers is a continuing breach or wrong. As such, their cause

23 of action for breach of contract and breach of good faith and fair dealing are based on a "theory

24

of continuous accrual." Continuous accrual applies whenever there is a continuing or recurring obligation.  "A contract that creates continuing obligations 'is capable of a series of partial breaches or a single total breach by repudiation.'" *Minidoka Irrigation Dist. v. Dep't of Interior of U.S.,* 406 F.3d 567, 572-73 (9th Cir. 2005); *Peterson v. Highland Music, Inc.,* 140 F.3d 1313 (9th Cir. 1998) (Plaintiff musicians asserted claims for royalties under a recording contract that had been formed thirty years earlier for which the defendants continued to fail to make payments); *Wolf v. Travolta*, 167 F.Supp. 3d 1077 (C.D. Cal. 2016) (continuous accrual applies "When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.")   Continuous accrual applies in this case because the Pifers would have been obligated to make payments under the Loan Modification Agreement for 26 years. BANA's breach continues to accrue because for each missed payment that the Pifers did not know they should have made, the elements of the claim are present—wrongdoing, harm, and causation.

**THE PIFERS' CLAIM OF NEGLIGENT MISREPRESENTATION AGAINST BANA IS VIABLE**

The Pifers' claim of negligent misrepresentation against BANA is not time-barred. As discussed, BANA's conduct and written communication have directly contradicted its position that the Loan Modification Agreement was valid and enforceable and continues to operate up until the present. The Pifers could not have known this position taken by BANA but for the filing of this lawsuit. The federal discovery rule provides that in the appropriate circumstances, a cause of action may accrue, and the statute of limitations period may begin to run, not when the injury that serves as the basis for the action occurs, but when a plaintiff knows or has reason to know of the injury. *Clement v. United Homes, LLC*, 914 F.Supp.2d 362 (E.D. NY. 2012) (Claims under the Fair Housing Act, as well as under 42 U.S.C.S. §§ 1981, 1982 and 1985, are

1  subject to the discovery rule and thus accrue when a plaintiff knows or has reason to know of

2  the injury that serves as the basis for the action). The Ninth Circuit applies the discovery rule in

3  determination of state's statute of limitations. *Bibeau v. Pac. N.W. Research Found. Inc.,* 188

4  F.3d 1105, 1108 (9th Cir. 1999) ("It is inequitable to bar someone who has no idea he has been

5  harmed from seeking redress, the statute of limitations has generally been tolled by the

6  'discovery rule.' "), amended by 208 F.3d 831 (9th Cir. 2000).

7  Plaintiffs assert that BANA as the lender and loan servicer, it (1) supplied information

8  for the guidance of others, including the Pifers, SLS and Shell Point, regarding the Loan, which

9  was false, (2) knew or should have known that the information was supplied to guide the Pifers

10 in their mortgage loan and knew that the information supplied was false or otherwise

11 misleading,  (3) was negligent in obtaining or communicating the false information, (4) the

12 Pifers relied on the false information, (5) the Pifers' reliance was reasonable, and (6) the false

13 information proximately caused the Pifers damages.

14 Here, BANA asserts that the Pifers' claim should be dismissed because "they do not

15 allege that BANA made any actual misrepresentation regarding the status of the Loan or Loan

16 Modification." This assertion overlooks the numerous correspondences issued by BANA

17 between 2011 and 2013 that caused the Pifers as borrowers to have whiplash. Did they have a

18 loan modification, yes they did. Oh no, they didn't. Well, we offered them a trial modification,

19 but before they could accept, let's tell them they are not eligible for a loan modification.

20 BANA's claim that it did not affirmatively mislead the Pifers is simply incredulous and must be

21 rejected.

22 **THE PIFERS' CLAIM AGAISNT BANA FOR VIOLATION OF THE CONSUMER PROTECTION ACT IS VIABLE AND MUST NOT BE DISMISSED**

23

24

RESPONSE/OBJECTION TO MOTION TO DISMISS

8

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1     The Pifers allege that BANA violated the Washington Consumer Protection Act ("CPA") as to each of the five elements: they have committed one or more (1) unfair or deceptive act or practice; (2) in trade or commerce; (3) that has an impact on the public interest; (4) resulted in injury in the Pifers in their business or property; and (5) the injury and damages suffered were proximately caused by the defendants. They allege that the business of default loan servicing with includes nonjudicial foreclosure has been adjudicated by Washington courts to be occurring in commerce and impacting an important public interest. BANA does not deny that it uses the mail, the telephone and the internet to transmit notice of intent to accelerate, periodic statements, notice of default, debt validation, notice of trustee's sale, and other correspondence to borrowers including the Pifers; they receive substantial compensation for their services and part of their compensation comes directly from payments made by borrowers. Thus, the defendants' business activities are carried out in trade or commerce.

The Pifers specifically allege that where BANA issued the Notice of Intent to Accelerate dated November 2, 2011, the lender, whoever it is, had only six years from the date of the Notice of Intent to Accelerate to foreclose on the Property as collateral of the mortgage loan. Where the six-year period of statute of limitations expired on November 2, 2017, the Notice of Trustee's Sale recorded on January 17, 2018, setting the auction sale date of May 18, 2018, was issued after the statute of limitations had expired and is not effective to foreclose on the Pifer residence.

The defendants' action of foreclosing on the Pifer residence based on the terms of the Deed of Trust after the statute of limitations expired is unfair. The defendants' act of transmitting various foreclosure documents and correspondence to the Pifers for debt collection purposes (compelling payment to cure) and for foreclosure purposes is deceptive because the lender's legal right to foreclose on the collateral has been limited or eliminated by the statute of

1 limitations.

2 The Pifers allege that there are inconsistency between BANA's assertion of ownership of the Loan, and the competing claim asserted by the Bank of New York Mellon as the purported beneficiary under the Deed of Trust. There exists a great doubt about who is the proper beneficiary to appoint the defendants to be trustee for purposes of the nonjudicial foreclosure. BANA is directly responsible for the inconsistency regarding ownership of the Loan and beneficiary status before commencing nonjudicial foreclosure and said inconsistency materially violated the Deed of Trust Act, which serves as the basis for the Pifers' claims under the CPA. BANA is directly responsible for transferring inaccurate information concerning the status of the Pifer loan, including whether a loan modification was consummated, to the subsequent servicers who in turn issued inaccurate periodic statements over the course of 2015, 2016, 2017 and 2018. The Pifers have suffered an enormous loss of time and resources in their efforts to contact the loan servicers, the purported loan owner, and other governmental agencies to get answers to their questions regarding the Loan and the Foreclosure. The time spent and resources expended by the Pifers are time that they could work and earn an income, or enjoy their life. These establish the injury element of a private action by the Pifers against the defendants under the Consumer Protection Act.

## **CONCLUSION**

Essentially, BANA argues that the Court should reject the Pifers' claims in their entirety as time-barred. Yet, in fairness, BANA's conduct of deception and unfairness is what caused the enormous confusion and frustration for the Pifers as borrowers who are trapped in the default-foreclosure purgatory. There exists equitable and compelling reasons why BANA's Motion to Dismiss should be denied and the Pifers respectfully request the Court to deny it.

RESPONSE/OBJECTION TO MOTION TO DISMISS

10

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax 206-933-7863

DATED this 11th day of June, 2018.

BARRAZA LAW, PLLC

*/s/ V. Omar Barraza*

VICENTE OMAR BARRAZA, WSBA 43589
Counsel for Plaintiff
14245-F Ambaum Blvd SW, Seattle WA 98166
206-933-7861 Fax 206-933-7863

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2018, I caused to be electronically filed and served the foregoing Response and Objection to Defendant BANA's Motion to Dismiss with the Clerk of Court via CM/ECF system upon the following:

Michael J. Kapaun, Esq., 422 W. Riverside Ave, Ste 1100, Spokane, WA 99201-0300
mjk@wiherspoonkelley.co

David J. Elkanich, Esq., 2300 US Bancorp Tower, 111 SW 5th Avenue, Portland, OR 97204
Serve.dje@hklaw.com, Nellie.Barnard@hklw.com