UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY PIFER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants. | Case No. 2:18-CV-606-RSL<br><br>ORDER GRANTING IN PART DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

This matter comes before the Court on defendant Bank of America, N.A.'s ("BANA") motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Dkt. #20. Plaintiffs Larry Pifer and Pamela Pifer filed the FAC[1] against defendants BANA, Specialized Loan Servicing LLC ("SLS"), New Penn Financial LLC, dba Shellpoint Mortgage Servicing ("Shellpoint") and The Bank Of New York, As Trustee for The Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-8 ("BONY") on April 27, 2018. Dkt. #3. Defendants SLS, Shellpoint and BONY have also filed motions to dismiss the FAC. See Dkts. #29, #31.

## BACKGROUND

In May 2007, plaintiffs obtained a loan of $393,750 from Countrywide Home Loans Inc.,

---

[1] The Amended Complaint merely corrected the name of defendant Shellpoint, LLC to New Penn Financial LLC, dba Shellpoint Mortgage Servicing. See Dkt. #21.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 1

dba America's Wholesale Lender ("AWL"),[2] with interest in the amount of 7.6% ("the Loan"). Dkt. #3 at 4; see Ex. C, Dkt. #21-1 at 18-22. This was secured by a Deed of Trust recorded on May 7, 2007 over real property located at 14313 214th Street SE, Swinomish WA 98296 ("the Property"). The Deed of Trust lists plaintiffs as borrowers, see Ex. A, Dkt. #21-1 at 2, AWL as the lender, see id. at 3, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the lender's nominee, see id.

On July 5, 2011, BANA sent plaintiffs a letter with a proposed Loan Modification Agreement ("LMA"). Ex. D, Dkt. #21-1 at 24-29. BANA listed an unpaid principal amount of $434,710.30 and a new interest rate of 2%. Id. at 24. It stated that the interest rate would increase in steps of 2% in the first and second years, 3% in the fourth year, 4% in the fifth year and 4.875% in the sixth year. BANA stated that the LMA "[would] not be binding or effective unless and until it [had] been signed by both [plaintiffs] and [BANA]." Id. It also included instructions on how to accept the proposed modification. Plaintiffs were required to sign and date the LMA in the presence of a notary and return the signed and notarized documents using the prepaid FedEx envelope and address label provided by July 15, 2011. Id. The LMA was signed by plaintiffs on July 11, 2011 before a notary. Id. at 28. The space for BANA's signature is blank. Id. at 29.

Plaintiffs made some payments pursuant to the LMA, see Dkt. #3 at ¶12; see Dkt. #20 at 3, but they did not receive a copy of the signed and fully executed LMA from BANA. Id. They eventually stopped making payments after September 2011. Id. at ¶54. BANA issued a Notice of Intent to Accelerate on November 2, 2011. Ex. E, Dkt. #21-1 at 31-32. It stated that plaintiffs could cure their default by paying an amount of $4,670.02, plus any additional amounts that

---

[2] Plaintiffs contend AWL was not incorporated until more than a year later, on December 16, 2008, and that it was therefore not a legal entity and incapable of entering into a contract with plaintiffs at the time. Dkt. #3 at 4. In support, they attached as an exhibit to the FAC information from the NYS Department of State on the incorporation of "America's Wholesale Lender, Inc." Ex. B, Dkt. #21-1 at 15. As BANA points out, the name "America's Wholesale Lender, *Inc*." is different from AWL. Dkt. #20 at 3. Regardless, plaintiffs do not press this point in the FAC.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 2

became due, by December 2, 2011. Id. at 31. If plaintiffs failed to cure the default, the mortgage payments would be accelerated with the full amount becoming due and payable in full, and foreclosure proceedings would be initiated. Id. BANA also outlined other options available to plaintiffs if they were unable to cure the default by December 2, 2011, including a modification to their loan agreement. Id. at 32. It did not mention the LMA. On February 23, 2012, MERS executed an Assignment of Deed of Trust in favor of The Bank of New York Mellon FKA BONY ("MERS Assignment"). Ex. F.,[3] Dkt. #21-1 at 34-35.

Plaintiffs claim that they asked BANA about the circumstances of the MERS Assignment on January 8, 2013, but BANA failed to respond. They also state that they continued to ask BANA about the status of the Loan, and that BANA never explained the status of the agreement or provided an executed copy of the LMA. Dkt. #3 at ¶22. At some point, plaintiffs submitted a request for a loan modification. By a notice dated January 15, 2013, BANA denied it, stating that the loan was not eligible for modification because it had been previously modified, and their program did not permit more than one modification in 12 months or two modifications over a 5-year period. Ex. G, Dkt. #21-2 at 37. Two months later, on March 4, 2013, BANA sent plaintiffs a notice stating that they were in fact eligible for a trial modification. Ex. H, Dkt. #21-2 at 41. It informed plaintiffs that they could participate in the Trial Period Plan by making a payment of $1,968.63 within 30 calendar days after April 1, 2013. Id. If they successfully made three trial payments, BANA stated that they "[would] contact [plaintiffs] to discuss the terms of [their] permanent modification." Id. Plaintiff claims that this amount did not relate to the LMA, and that BANA did not acknowledge the payments that they made toward the LMA in 2011. Dkt. #3 at ¶15.

BANA then sent another letter to plaintiffs on March 26, 2013. Ex. I, Dkt. #21-1 at 43. BANA stated that it had previously evaluated plaintiffs' loan for a modification and had

---

[3] The Assignment of Deed of Trust is also attached as Exhibit N, Dkt. #21-2 at 20-21.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 3

informed them by a letter dated September 25, 2012[4] that they were not eligible for a modification. Id. It disclosed that as part of the review process, it had obtained a credit score from TransUnion, a consumer reporting agency. Id. Plaintiffs claim that, as a result of these communications, they did not know what their obligations were and what payments to make going forward. Dkt. #3 at ¶17.

Servicing of the Loan was transferred to defendant SLS effective November 16, 2013. Id. at ¶18; Dkt. #20 at 3. On January 12, 2016, SLS sent a letter to plaintiffs' insurance carrier, Enumclaw P&C Ins., stating that foreclosure proceedings had begun in relation to the Property. Ex. L, Dkt. #21-2 at 15. A Notice of Trustee's Sale[5] had been recorded on March 13, 2013, but it was discontinued on May 17, 2013. Ex. M, Dkt. #21-2 at 17. In 2016, the Loan was again transferred to Shellpoint. Id. at ¶23. Shellpoint sent a Validation of Debt Notice to plaintiffs on December 8, 2016. Ex. O, Dkt. #21-2 at 23-24. This Notice stated that plaintiffs owed a debt of $143,810.10 and identified BANA as the creditor. See id. at ¶2. On January 18, 2017, Shellpoint sent a second Validation of Debt Notice to plaintiffs, stating that BONY was the owner of the Loan. Ex. P, Dkt. #21-2 at 26-27. Another Notice of Trustee's Sale was issued on January 17, 2018, setting a foreclosure sale for May 18, 2018. Ex. S, Dkt. #21-2 at 52-55.

Plaintiffs assert four causes of action against BANA. First, they bring a quiet title claim, contending that the statute of limitations has run on defendants' rights to foreclose on the Property. Dkt. #3 at ¶30. Second, plaintiffs assert a breach of contract and good faith claim. They contend that BANA never communicated to them that the payments demanded were based on the terms of the LMA. They claim that BANA incorrectly transferred the Loan to SLS, representing that plaintiffs were in default, and did not apply the payments that plaintiffs had previously made under the LMA. Id. at ¶¶ 33-34. Third, plaintiffs assert a negligent misrepresentation claim. They contend that in failing to return an executed copy of the LMA

---

[4] This referenced letter is not attached to plaintiffs' complaint or BANA's motion to dismiss.

[5] SLS, Shellpoint and BONY filed requests for judicial notice of the Notice of Trustee's Sale dated May 12, 2013. See Dkts. #30-1; #32-1.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 4

and/or explain that it is not their policy to do so, and in their correspondence, BANA misled plaintiffs regarding their payment obligations. Id. at ¶37. Fourth, plaintiffs assert that BANA violated Washington's Consumer Protection Act ("CPA"). See RCW 19.86 *et seq*. Plaintiffs allege that BANA knew or should have known that the foreclosure on the Property was time-barred. Id. at ¶¶ 54-56. They also contend that defendants failed to acknowledge the inconsistency regarding the ownership of the Loan before commencing foreclosure, thus violating the Deed of Trust Act. Id. at ¶57. They allege that defendants failed to investigate the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. They claim that defendants "dual-tracked" the Loan, engaging plaintiffs in loss mitigation while simultaneously referring them to foreclosure. Id. at ¶59. Finally, they allege that defendants failed to explain the terms of the Loan in statements issued between 2015 and 2018 so as to enable plaintiffs to cure the default. Id. at ¶60.

## DISCUSSION

A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks and ellipses omitted); see Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 556). There must be more than a sheer possibility that a defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 556). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

### A. Plaintiffs' Quiet Title Claim

"An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination." Kobza v. Tripp, 105 Wn. App. 90, 95 (2001); see RCW 7.28.10.

BANA argues that plaintiffs fail to allege that BANA is asserting any present interest in the Loan or in the Property. Dkt. #20 at 5. Rather, plaintiffs contend that BANA ceased servicing the Loan in 2013 and that the Loan is now owned by BONY. BANA requests that the quiet title claim be dismissed against BANA because there is no competing claim to quiet. Id. Plaintiffs argue in their response that they have no way of determining whether the "lender" is the same as the "owner," and that a quiet title claim is as good against BANA as against any other entity. Dkt. #22 at 4. They also received a Validation of Debt Notice on December 8, 2016 from SLS stating that they owed an amount of $143,810.10 to BANA. Ex. O, Dkt. #21-2 at 23.

BANA transferred servicing of the Loan to SLS in 2013 and does not make a claim to ownership of the property. Arnett v. Mortg. Elec. Registration Sys., Inc., No. 14-CV-05298-BJR, 2014 WL 5111621, at *5 (W.D. Wash. Oct. 10, 2014); see Dkt. #20 at 5. This claim fails and is dismissed.

### B. Plaintiffs' Breach of Contract and Good Faith Claim

BANA argues that it did not breach the LMA because it did not have a contractual duty to confirm its execution with plaintiffs. Dkt. #20 at 6. Rather, the LMA "was an offer made by BANA that plaintiffs allege they accepted and performed upon briefly." Id. Furthermore, BANA argues that plaintiffs' prior payments were applied against the LMA. The principal balance on the Loan was $434,710.30, but the first SLS statement issued on January 20, 2014 shows an outstanding balance of $432,572.88, reflecting the payments made by plaintiffs pursuant to the LMA. Ex. J, Dkt. #21-1 at 46; see Dkt. #3 at ¶¶ 17-18. Plaintiffs do not contest this in their response. See Dkt. #22.

Under Washington law, "a breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Kautsman v. Carrington Mortg. Servs. LLC, No. C16-1940-JCC, 2017 WL 2986303, at *2 (W.D. Wash. July 13, 2017) (quoting Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus., 899 P.2d 6, 9 (Wn. App. 1995)). BANA is correct in that the LMA does not impose a duty upon BANA to convey its execution to plaintiffs. Dkt. #20 at 6. Plaintiffs' breach of contract claim fails and is dismissed.

However, the LMA stated that it would not become binding or effective "unless and until it [had] been signed by both [plaintiffs] and [BANA]." Ex. D, Dkt. #21-2 at 24. There is no signature from BANA. Id. at 29. Accepting plaintiffs' allegations as true, see Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), they were unclear on their payment obligations in the absence of an executed contract. Dkt. #3 at ¶17. This confusion was compounded by BANA's subsequent communications, beginning with a Notice of Intent to Accelerate with an offer to modify the Loan on November 2, 2011, followed by a notice denying any modification to the Loan on January 15, 2013, followed by another notice offering plaintiffs a Trial Period Plan modification on March 3, 2013, and ending with a notice stating that they were ineligible for a modification on March 26, 2013. See Exs. E, G-I, Dkt. #21-1. BANA also did not respond to their inquiries about the status of the Loan. Id. at ¶22.

A duty of good faith and fair dealing is implied in every contract. Microsoft Corp. v. Motorola, Inc., 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013) (citing Badgett v. Sec. State Bank, 116 Wn.2d 563 (1991)). This duty "requires the parties to a contract to cooperate with each other so that each may obtain the full benefit of performance, even if the parties have different requirements under the contract." Id. (citing Badgett, 116 Wn.2d 563). Plaintiffs have made out a plausible claim for a breach of the duty of good faith and fair dealing.

## C. Plaintiffs' Negligent Misrepresentation Claim

Under Washington law, a negligent representation claim has six elements: (1) the defendant supplied false information that guided the plaintiff's business transaction, (2) the defendant knew or should have known that the information was offered to advise the plaintiff's business transaction, (3) the defendant obtained or communicated the false information negligently, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff's damages. Childs v. Microsoft Corp., No. C10-1916RAJ, 2011 WL 6330141, at *5 (W.D. Wash. Dec. 16, 2011), aff'd, 489 F. App'x 224 (9th Cir. 2012) (citing Ross v. Kirner, 162 Wn.2d 493, 499 (2007) (en banc)). A three-year statute of limitations applies to plaintiffs' claim of negligent misrepresentation. Putz v. Golden, 847 F. Supp. 2d 1273, 1281 (W.D. Wash. 2012) (citing RCW 4.16.040(1)). "The statute of limitations does not begin to run until a plaintiff discovers or reasonably could have discovered all the essential elements of the cause of action." Id. (citing Allyn v. Boe, 87 Wn. App. 722 (1997)). "When a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered." Id. (quoting 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566 (2006)). Plaintiff's complaint was filed on April 25, 2018. Dkt. #1.

BANA argues that plaintiffs' claim is time-barred because BANA stopped servicing the Loan in 2013. Any claim accrued when the Loan was transferred to SLS. Dkt. #20 at 8. Alternatively, BANA claims that plaintiffs had knowledge of the status of the Loan by at least February 2014 from SLS's statement, which reflected the terms of the LMA. Id. Even if the claim is not time-barred, BANA argues that it must fail because plaintiffs allege that BANA did not provide them with information on the status of the Loan, not that BANA provided *false* information. Plaintiffs argue that BANA's conduct and written communications "contradicted its position that the [LMA] was valid and enforceable" and that they could not have known that this was BANA's position until its representations in this lawsuit. Dkt. #22 at 7.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 8

It is not obvious that plaintiffs would have had knowledge of the status of the Loan from SLS's first statement, even if it did reflect the terms of the LMA, given the confusing and often contradictory nature of BANA's correspondence between 2011 and 2013. See Dkt. #20 at 7; Ex. J, Dkt. #21-1 at 46. See Exs. E, G-I, Dkt. #21-1. On this record, the Court cannot find that plaintiffs "reasonably could have discovered all the essential elements of the cause of action" by February 2014.[6] Putz, 847 F. Supp. 2d at 1281. Plaintiffs' claim is not time-barred.

BANA's attempt to distinguish between failing to provide information and providing false information is not persuasive. BANA is correct in that "[a]n omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." Iron Partners, LLC v. Dames & Moore, No. C07-5643RBL, 2009 WL 1587898, at *3 (W.D. Wash. June 8, 2009) (citing Ross, 162 Wn.2d at 499 (2007)). However, BANA did not only fail to respond to plaintiffs' inquiries or to provide an executed copy of the LMA. The LMA was dated July 5, 2011. Ex. D, Dkt. #21-1 at 24. In its letter dated January 15, 2013, BANA rejected plaintiffs' request for a loan modification because its program did not "allow more than one modification in 12 months or 2 modifications over a 5-year period." Ex. G, Dkt. #21-1 at 37. Yet two months later, on March 4, 2013, BANA sent a letter approving a trial modification for plaintiffs. Ex. H, Dkt. #21-2 at 41. About three weeks later, BANA sent a letter stating that it had "previously evaluated [the Loan] for a modification and informed [plaintiffs] by a letter dated 9/25/2012 that [they] were not eligible." Ex. I, Dkt. #21-1 at 43. It is therefore plausible that, given its inconsistencies, BANA's correspondence contained false information regarding plaintiffs' options and payment obligations. It is also plausible that BANA knew that any information it provided was supplied to plaintiffs to guide them in a business transaction, that BANA was negligent in obtaining or communicating that information, that plaintiffs reasonably relied on that information, and that the information proximately caused

---

[6] In the FAC, plaintiffs claimed that, "in 2018, through the periodic statements issued by SLS and Shellpoint, [they] finally discovered for the first time that the defendants were enforcing the terms of the [LMA] that they signed and under which they initially performed." FAC at ¶32. Regardless, this would not render plaintiffs' claim time-barred under the statute of limitations, either.

ORDER GRANTING IN PART DEFENDANT BANK
OF AMERICA N.A.'S MOTION TO DISMISS - 9

plaintiffs' damages. Top Notch Sols., Inc. v. Crouse & Assocs. Ins. Brokers, Inc., No. C17-827 TSZ, 2017 WL 5158525, at *5 (W.D. Wash. Nov. 7, 2017) (citing Ross, 162 Wn.2d at 499). All the information BANA provided was intended to guide plaintiffs with regard to their payments. Plaintiffs have alleged that, as a result of the communications, they "were not able to know what their obligations were and what payments to make on a monthly basis going forward." Dkt. #3 at ¶17. Plaintiffs have made out a plausible claim for negligent misrepresentation.

### D. Plaintiffs' CPA Claim

To prevail on a private claim under Washington's CPA, a plaintiff must prove "(1) [an] unfair or deceptive act or practice (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 780 (1986). A plaintiff may predicate the first element on "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Hard 2 Find Accessories, Inc. v. Amazon.com, Inc., 58 F. Supp. 3d 1166, 1175 (W.D. Wash. 2014), aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc., 691 F. App'x 406 (9th Cir. 2017) (quoting Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013)). "As a general matter, the CPA is to be "liberally construed that its beneficial purposes may be served."" Meyer v. U.S. Bank Nat. Ass'n, 530 B.R. 767, 776 (W.D. Wash. 2015), aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc., 712 F. App'x 619 (9th Cir. 2017) (quoting RCW 19.86.920).

Plaintiffs allege that defendants violated the CPA by attempting to foreclose on a time-barred loan, by failing to investigate competing claims of ownership from BANA and BONY prior to commencing foreclosure, and by "dual-tracking" the Loan. Id. at ¶¶ 54-57, 59. As previously discussed, BANA was not involved in the foreclosure. Plaintiffs also allege that defendants failed to investigate the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. But they do not plead facts sufficient to establish that any failure to investigate was an unfair or deceptive act or practice. Finally, they allege that defendants

failed to explain the terms of the Loan in statements issued between 2015 and 2018. Id. at ¶60. It is possible that BANA's failure to communicate effectively with plaintiffs and provide an executed copy of the LMA constitutes an unfair or deceptive act or practice. See Elmore v. Bank of Am., N.A., No. 2:14-CV-00241-JLQ, 2014 WL 7404130, at *5 (E.D. Wash. Dec. 30, 2014). However, BANA ceased servicing the Loan in 2013. Id. at ¶23.

For all the foregoing reasons, BANA's motion is GRANTED IN PART. It is hereby ORDERED that plaintiffs' quiet title claim (Count One), breach of contract claim (part of Count Three) and CPA claim (Count Seven) as against BANA are DISMISSED.

DATED this 15th day of March, 2019.

Robert S. Lasnik
United States District Judge