# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

LARRY PIFER, at al.,

    Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

    Defendants.

Case No. 2:18-CV-606-RSL

ORDER GRANTING IN PART DEFENDANT SPECIALIZED LOAN SERVICING LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

This matter comes before the Court on defendant Specialized Loan Servicing LLC's ("SLS") motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Dkt. #29. Plaintiffs Larry Pifer and Pamela Pifer filed the FAC[1] against defendants Bank of America, N.A. ("BANA"), SLS, New Penn Financial LLC, dba Shellpoint Mortgage Servicing ("Shellpoint") and The Bank Of New York, As Trustee for The Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-8 ("BONY") on April 27, 2018. Dkt. #3. Defendants BANA, Shellpoint and BONY have also filed motions to dismiss the FAC. See Dkts. #20, #31.

## BACKGROUND

In May 2007, plaintiffs obtained a loan of #393,750 from Countrywide Home Loans Inc. dba America's Wholesale Lender ("AWL"), with interest in the amount of 7.6% ("the Loan").

---

[1] The Amended Complaint merely corrected the name of defendant Shellpoint, LLC to New Penn Financial LLC, dba Shellpoint Mortgage Servicing. See Dkt. #21.

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 1

Dkt. #3 at 4; see Ex. C, Dkt. #21-1 at 18-22. This was secured by a Deed of Trust dated May 7, 2007 over real property located at 14313 214th Street SE, Swinomish WA 98296 ("the Property"). The Deed of Trust lists plaintiffs as borrowers, see Ex. A, Dkt. #21-1 at 2, AWL as the lender, see id. at 3, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the lender's nominee, see id.

On July 5, 2011, BANA sent plaintiffs a letter with a proposed Loan Modification Agreement ("LMA"). Ex. D, Dkt. #21-1 at 24-29. BANA listed an unpaid principal amount of $434,710.30 and a new interest rate of 2%. Id. at 24. It stated that the interest rate would increase in steps of 2% in the first and second years, 3% in the fourth year, 4% in the fifth year and 4.875% in the sixth year. BANA stated that the LMA "[would] not be binding or effective unless and until it [had] been signed by both [plaintiffs] and [BANA]." Id. It also included instructions on how to accept the proposed modification. Plaintiffs were required to sign and date the LMA in the presence of a notary and return the signed and notarized documents using the prepaid FedEx envelope and address label provided by July 15, 2011. Id. The LMA was signed by plaintiffs on July 11, 2011 before a notary. Id. at 28. The space for BANA's signature is blank. Id. at 29.

Plaintiffs made some payments pursuant to the LMA, see Dkt. #3 at ¶12; see Dkt. #20 at 3, but they did not receive a copy of the signed and fully executed LMA from BANA. Id. They eventually stopped making payments after September 2011. Id. at ¶54. BANA issued a Notice of Intent to Accelerate on November 2, 2011. Ex. E, Dkt. #21-1 at 31-32. On February 23, 2012, MERS executed an Assignment of Deed of Trust in favor of The Bank of New York Mellon FKA BONY ("MERS Assignment"). Ex. F.,[2] Dkt. #21-1 at 34-35. Plaintiffs claim that they asked BANA about the circumstances of the MERS Assignment on January 8, 2013, but BANA failed to respond. They also state that they continued to ask BANA about the status of the Loan,

---

[2] The Assignment of Deed of Trust is also attached as Exhibit N, Dkt. #21-2 at 20-21.

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 2

and that BANA never explained the status of the agreement or provided an executed copy of the LMA. Dkt. #3 at ¶22. The loan servicing was transferred to SLS in 2013. Id. at ¶23.

SLS issued its first mortgage statement to plaintiffs on January 20, 2014. This reflected an outstanding principal of $432,572.88. Ex. J, Dkt. #21-1 at 46. Plaintiffs allege that this amount was "inexplicably less than the new principal stated on BANA's [LMA]."[3] SLS's statements also showed step interest rates of 3% and 4%. Dkt. #3 at ¶18. The interest rate increased to 4.875% in August 2016 "without any notice or explanation to [plaintiffs] for the increase." Id. at ¶19. SLS continued to issue statements between January 20, 2014 and November 18, 2016. Ex. J, Dkt. #21-1 at 46-68; Ex. K, Dkt. #21-2 at 1-13.

On January 12, 2016, SLS sent a letter to plaintiffs' insurance carrier, Enumclaw P&C Ins. ("Enumclaw"), stating that foreclosure proceedings had begun in relation to the Property. Ex. L, Dkt. #21-2 at 15. A Notice of Trustee's Sale[4] had been recorded on March 13, 2013, but it was discontinued on May 17, 2013.[5] Ex. M, Dkt. #21-2 at 17. In 2016, the Loan was again transferred to Shellpoint. Id. at ¶23. Shellpoint sent a Validation of Debt Notice to plaintiffs on December 8, 2016. Ex. O, Dkt. #21-2 at 23-24. This Notice stated that plaintiffs owed a debt of $143,810.10 and identified BANA as the creditor. See id. at ¶2. Another Notice of Trustee's Sale was issued on January 17, 2018, setting a foreclosure sale for May 18, 2018. Ex. S, Dkt. #21-2 at 52-55.

---

[3] BANA claimed in its motion to dismiss that the principal amount reflected the application of plaintiffs' prior payments against the LMA in August and September 2011. See Dkt. #20 at 7.

[4] The Court takes judicial notice of the Notice of Trustee's Sale recorded on March 13. 2013, per SLS's request. Dkt. #30; Dkt. #30-1; see Fed. R. Evid. 201(b); Edwards v. Caliber Home Loans, No. C16-1466-JCC, 2017 WL 2713689, at *2 (W.D. Wash. June 7, 2017), aff'd sub nom. Edwards v. Caliber Home Loans, Inc., 708 F. App'x 438 (9th Cir. 2018).

[5] Plaintiffs filed a request for judicial notice of the Notice of Discontinuance of Trustee's Sale. Dkt. #37. This is not necessary, as the Notice is already annexed as an Exhibit to plaintiffs' FAC. Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we consider … allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (quoting Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.2007) (per curiam)) (internal quotation marks omitted).

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 3

Plaintiffs assert three causes of action against SLS. First, they bring a quiet title claim, contending that the statute of limitations has run on defendants' rights to foreclose on the Property. Dkt. #3 at ¶30. Second, they assert a negligent misrepresentation claim. They contend that SLS committed negligent misrepresentation by erroneously informing plaintiffs' insurance carrier that the Property was under foreclosure, and by "creating and mailing … periodic statements to [plaintiffs] in 2015 and 2016 without specifying the basis for its calculations of the amounts due and its demand for payment." Id. at ¶¶ 39-42. Third, plaintiffs assert that SLS violated Washington's Consumer Protection Act ("CPA"). See RCW 19.86 *et seq*. Plaintiffs allege that SLS knew or should have known that the foreclosure on the Property was time-barred. Id. at ¶¶ 54-56. They also contend that defendants failed to acknowledge the inconsistency regarding the ownership of the Loan before commencing foreclosure, thus violating the Deed of Trust Act. Id. at ¶57. They allege that defendants failed to investigate the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. They claim that defendants "dual-tracked" the Loan, engaging plaintiffs in loss mitigation while simultaneously referring them to foreclosure. Id. at ¶59. Finally, they allege that defendants failed to explain the terms of the Loan in statements issued between 2015 and 2018 so as to enable plaintiffs to cure the default. Id. at ¶60.

## **DISCUSSION**

A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks and ellipses omitted); see Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id.

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 4

(citing Twombly, 550 U.S. at 556). There must be more than a sheer possibility that a defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 556). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

### A. Plaintiffs' Quiet Title Claim

"An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination." Kobza v. Tripp, 105 Wn. App. 90, 95 (2001); see RCW 7.28.10.

SLS argues that plaintiffs' claim for quiet title as against SLS must fail because SLS "[has] not, and as a matter of law cannot, allege that SLS has an ownership interest in or a right to possess the Property." Dkt. #29 at 4. Plaintiffs contend in their response that "SLS held or could be holding an adverse interest to their claim of ownership as the servicing agent for defendant BONY. Whether SLS is the owner of the [Loan] or participates in the present foreclosure of their home is not relevant, [as] SLS has acted as the loan servicer and has taken actions that are adverse to [plaintiffs'] ownership interest of the Property." Dkt. #36 at 2-3.

SLS transferred servicing of the Loan to Shellpoint in 2016 and does not make a claim to ownership of the Property. Arnett v. Mortg. Elec. Registration Sys., Inc., No. 14-CV-05298-BJR, 2014 WL 5111621, at *5 (W.D. Wash. Oct. 10, 2014); see Dkt. #20 at 5. This claim fails and is dismissed.

### B. Plaintiffs' Negligent Misrepresentation Claim

A negligent representation claim has six elements: (1) the defendant supplied false information that guided the plaintiff's business transaction, (2) the defendant knew or should have known that the information was offered to advise the plaintiff's business transaction, (3) the defendant obtained or communicated the false information negligently, (4) the plaintiff

relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff's damages. Childs v. Microsoft Corp., No. C10-1916RAJ, 2011 WL 6330141, at *5 (W.D. Wash. Dec. 16, 2011), aff'd, 489 F. App'x 224 (9th Cir. 2012) (citing Ross v. Kirner, 162 Wn.2d 493, 499 (2007) (en banc)).

First, plaintiffs claim that SLS committed negligent misrepresentation in its misstatement to plaintiffs' insurance carrier that plaintiffs' Property was under foreclosure. Ex. L, Dkt. #21-2 at 15. SLS argues that it did not contact the insurance carrier to guide *plaintiffs'* business transaction. Dkt. #29 at 6-7. The Court agrees. Any misrepresentation that occurred was to Enumclaw. That does not give rise to a cause of action by plaintiffs. Top Notch Sols., Inc. v. Crouse & Assocs. Ins. Brokers, Inc., No. C17-827 TSZ, 2017 WL 5158525, at *5 (W.D. Wash. Nov. 7, 2017) (dismissing claims of negligent misrepresentation where the statements were made to third parties rather than plaintiffs).

Second, plaintiffs claim that SLS was negligent in making demands for payments based on step interest rates of 3% and 4% even though the original promissory note listed different interest rates. Dkt. #3 at ¶43. Plaintiffs "relied upon the periodic statements issued by SLS to their detriment; they could not pay the amounts demanded … because of the discrepancies between the original terms of the Loan and what [was] represented by SLS'[s] periodic statements." These misrepresentations "caused the Loan to be in a chronic state of default and led to the impending foreclosure sale." Id. SLS argues that plaintiffs have not explained how SLS's statements contained misrepresentations, and in any case, they had already defaulted on their Loan in 2011 before SLS became the loan servicer. No consequence flowed from SLS's statements. Dkt. #29 at 6-7.

However, accepting plaintiffs' allegations as true, see Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), it is plausible that SLS's statements contained false information that caused plaintiffs to continue to default on their Loan as they were unsure of their payment obligations going forward. Plaintiffs have alleged that they relied on the periodic statements issued by SLS and decided not to pay the amounts demanded because of the discrepancies

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 6

between the original terms of the Loan and the terms represented in SLS's statements. Dkt. #3 at ¶43. They have also alleged that they continued to ask BANA to clarify their payment obligations during this time, to no avail. Id. at. ¶22. Plaintiffs have made out a plausible claim.

   **C. Plaintiffs' CPA Claim**

   To prevail on a private claim under Washington's CPA, a plaintiff must prove "(1) [an] unfair or deceptive act or practice (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 780 (1986). A plaintiff may predicate the first element on "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Hard 2 Find Accessories, Inc. v. Amazon.com, Inc., 58 F. Supp. 3d 1166, 1175 (W.D. Wash. 2014), aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc., 691 F. App'x 406 (9th Cir. 2017) (quoting Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013)). "As a general matter, the CPA is to be "liberally construed that its beneficial purposes may be served."" Meyer v. U.S. Bank Nat. Ass'n, 530 B.R. 767, 776 (W.D. Wash. 2015), aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc., 712 F. App'x 619 (9th Cir. 2017) (quoting RCW 19.86.920).

   Plaintiffs put forth several bases for their CPA claim. They first allege that SLS violated the CPA by trying to foreclose on a time-barred debt and by commencing nonjudicial foreclosure in circumstances in which the ownership of the Loan was unclear. Dkt #3 at ¶¶ 54-57. SLS argues that the foreclosure was not untimely, and in any event, SLS was not involved in the foreclosure as it transferred servicing of the Loan to Shellpoint in 2016. Dkt. #29 at 7; see Dkt. #3 at ¶23. Shellpoint sent Validation of Debt Notices to plaintiffs on December 8, 2016 and January 18, 2017. Ex. O, Dkt. #21-2 at 23; Ex. P, Dkt. #21-2 at 26-27. It then continued to issue periodic statements to plaintiffs between December 21, 21 2016 and May 1, 2018. Ex. Q, Dkt. #21-2 at 30-47. It also responded to various inquiries by plaintiffs regarding the ownership of the Loan on January 18, 2017, February 15, 2018, and February 21, 2018. See Ex. P, Dkt. #21-2

at 26; Ex. R, Dkt. #21-2 at 49-50. Plaintiffs alleged in the FAC that it was Shellpoint that referred their Loan for foreclosure by its agent, North Star Trustee, LLC ("North Star"). Dkt. #3 at ¶27. The Notice of Trustee's Sale dated January 17, 2018 was recorded by North Star. Ex. S, Dkt. #21-2 at 52. Plaintiffs' cause of action, if any, is against Shellpoint and BONY. SLS ceased to have any involvement with their Loan after 2016.

Plaintiffs next argue that SLS violated the CPA by failing to investigate the circumstances underlying the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. They do not plead facts sufficient to establish that any failure to investigate was an unfair or deceptive act or practice. Plaintiffs also allege that defendants acted unfairly and deceptively by "dual-tracking" the Loan. Id. at ¶59. That allegation appears in context to refer to the foreclosure in 2018, in which, as previously discussed, SLS did not participate. Id. Plaintiffs contend in their response that the allegation encompasses the Notice of Trustee's Sale that was recorded on March 13, 2013 and discontinued on May 17, 2013. Dkt. #36 at 9. Plaintiffs' response cannot supplement their FAC. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (quoting Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998)). In any event, as BANA was still sending letters to plaintiffs in March 2013 and SLS did not send its first statement to plaintiffs until January 20, 2014, SLS does not appear to have been involved in the 2013 Notice of Trustee's Sale, either. See Ex. I, Dkt. #21-1 at 43; see Ex. J, Dkt. #21-1 at 46. Furthermore, "dual tracking" is not inherently an unfair or deceptive practice, and plaintiffs plead no facts to show why it was so in their case. See Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 333 (2016).

Finally, plaintiffs argue that SLS's failure to explain the terms of their Loan in its periodic statements was unfair and deceptive. Dkt. #3 at ¶60. Plaintiffs have not alleged that SLS failed to respond to any inquiries or that SLS had an affirmative duty to set out these terms. Dkt. #29 at 10. Plaintiffs have not made out a plausible CPA claim.

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 8

For all the foregoing reasons, SLS's motion to dismiss is GRANTED IN PART. It is hereby ORDERED that plaintiffs' quiet title claim (Count One) and CPA claim (Count Seven) are DISMISSED as against SLS.

DATED this 15th day of March, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT SPECIALIZED
LOAN SERVICING LLC'S MOTION TO DISMISS - 9