UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY PIFER, at al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants. | Case No. 2:18-CV-606-RSL<br><br>ORDER GRANTING IN PART DEFENDANTS SHELLPOINT AND BONY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

This matter comes before the Court on defendants New Penn Financial, LLC dba Shellpoint Mortgage Servicing ("Shellpoint") and The Bank of New York As Trustee for The Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-9 ("BONY")'s motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Dkt. #31. Plaintiffs Larry Pifer and Pamela Pifer filed the FAC[1] against defendants Bank of America, N.A. ("BANA"), Specialized Loan Servicing LLC ("SLS"), Shellpoint and BONY on April 27, 2018. Dkt. #3. Defendants BANA and SLS have also filed motions to dismiss the FAC. See Dkts. #20, #29.

## BACKGROUND

In May 2007, plaintiffs obtained a loan of $393,750 from Countrywide Home Loans Inc. dba America's Wholesale Lender ("AWL"), with interest in the amount of 7.6% ("the Loan").

---

[1] The Amended Complaint merely corrected the name of defendant Shellpoint, LLC to New Penn Financial LLC, dba Shellpoint Mortgage Servicing. See Dkt. #21.

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 1

Dkt. #3 at 4; see Ex. C, Dkt. #21-1 at 18-22. This was secured by a Deed of Trust dated May 7, 2007 over real property located at 14313 214th Street SE, Swinomish WA 98296 ("the Property"). The Deed of Trust lists plaintiffs as borrowers, see Ex. A, Dkt. #21-1 at 2, AWL as the lender, see id. at 3, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the lender's nominee, see id.

On July 5, 2011, BANA sent plaintiffs a letter with a proposed Loan Modification Agreement ("LMA"). Ex. D, Dkt. #21-1 at 24-29. BANA listed an unpaid principal amount of $434,710.30 and a new interest rate of 2%. Id. at 24. It stated that the interest rate would increase in steps of 2% in the first and second years, 3% in the fourth year, 4% in the fifth year and 4.875% in the sixth year. BANA stated that the LMA "[would] not be binding or effective unless and until it [had] been signed by both [plaintiffs] and [BANA]." Id. It also included instructions on how to accept the proposed modification. Plaintiffs were required to sign and date the LMA in the presence of a notary and return the signed and notarized documents using the prepaid FedEx envelope and address label provided by July 15, 2011. Id. The LMA was signed by plaintiffs on July 11, 2011 before a notary. Id. at 28. The space for BANA's signature is blank. Id. at 29.

Plaintiffs made some payments pursuant to the LMA, see Dkt. #3 at ¶12; see Dkt. #20 at 3, but they did not receive a copy of the signed and fully executed LMA from BANA. Id. They eventually stopped making payments after September 2011. Id. at ¶54. BANA issued a Notice of Intent to Accelerate on November 2, 2011. Ex. E, Dkt. #21-1 at 31-32. On February 23, 2012, MERS executed an Assignment of Deed of Trust in favor of The Bank of New York Mellon FKA BONY ("MERS Assignment"). Ex. F.,[2] Dkt. #21-1 at 34-35. Plaintiffs claim that they asked BANA about the circumstances of the MERS Assignment on January 8, 2013, but BANA failed to respond. They also state that they continued to ask BANA about the status of the Loan,

---

[2] The Assignment of Deed of Trust is also attached as Exhibit N, Dkt. #21-2 at 20-21.

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 2

and that BANA never explained the status of the agreement or provided an executed copy of the LMA. Dkt. #3 at ¶22. The loan servicing was transferred to SLS in 2013. Id. at ¶23.

On January 12, 2016, SLS sent a letter to plaintiffs' insurance carrier, Enumclaw P&C Ins. ("Enumclaw"), stating that foreclosure proceedings had begun in relation to the Property. Ex. L, Dkt. #21-2 at 15. A Notice of Trustee's Sale[3] had been recorded on March 13, 2013, but it was discontinued on May 17, 2013.[4] Ex. M, Dkt. #21-2 at 17. In 2016, the Loan was again transferred to Shellpoint. Id. at ¶23. Shellpoint sent a Validation of Debt Notice to plaintiffs on December 8, 2016. Ex. O, Dkt. #21-2 at 23-24. This Notice stated that plaintiffs owed a debt of $143,810.10 and identified BANA as the creditor to whom the debt was owed. Id. On January 18, 2017, Shellpoint sent a second Validation of Debt Notice to plaintiffs. Ex. P, Dkt. #21-2 at 26-27. It stated that the Loan had been updated to a "Cease & Desist" and that the purpose of the Notice was to respond to plaintiffs' inquiry. It stated that Shellpoint was the servicer for The Bank of New York Mellon fka BONY, and that Shellpoint had begun servicing the Loan on or about December 1, 2016. The owner of the Loan was listed as BONY. The Notice stated that the principal balance due was $432,572.88 and the interest rate was 2.000%, rather than 4.8750%. Id. Shellpoint issued statements to plaintiffs between December 21, 2016 and April 18, 2018. Ex. Q, Dkt. #21-2 at 30-47. These listed an interest rate of 4.8750%. Id.

On February 15 and February 21, 2018, Shellpoint responded to inquiries from plaintiffs and informed them that BONY was the owner of their Loan. Ex. R, Dkt. #21-2 at 49-50. At

---

[3] The Court takes judicial notice of the Notice of Trustee's Sale recorded on March 13. 2013, per Shellpoint's request. Dkt. #32; Dkt. #32-1; see Fed. R. Evid. 201(b); Edwards v. Caliber Home Loans, No. C16-1466-JCC, 2017 WL 2713689, at *2 (W.D. Wash. June 7, 2017), aff'd sub nom. Edwards v. Caliber Home Loans, Inc., 708 F. App'x 438 (9th Cir. 2018).

[4] Plaintiffs filed a request for judicial notice of the Notice of Discontinuance of Trustee's Sale. Dkt. #39. This is not necessary, as the Notice is already annexed as an Exhibit to plaintiffs' FAC. Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we consider … allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (quoting Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.2007) (per curiam)) (internal quotation marks omitted).

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 3

some point, Shellpoint referred the Loan for foreclosure by its agent, North Star Trustee ("North Star"). Dkt. #3 at ¶27. Another Notice of Trustee's Sale was issued on January 17, 2018, setting a foreclosure sale for May 18, 2018. Ex. S, Dkt. #21-2 at 52-55.

Plaintiffs assert four causes of action against Shellpoint and BONY. First, they bring a quiet title claim, contending that the statute of limitations has run on defendants' rights to foreclose on the Property. Dkt. #3 at ¶30. Second, they bring a claim against Shellpoint for violation of the Fair Debt Collection Practices Act ("FDCPA"). They claim that Shellpoint violated 15 U.S.C. § 1692(e) by initiating foreclosure proceedings on a time-barred debt. Id. at ¶31. Third, they bring a negligent misrepresentation claim against Shellpoint. They allege that Shellpoint committed negligent misrepresentation by sending plaintiffs Validation of Debt Notices claiming that BANA and then BONY were the owners of the Loan. Id. at ¶46. Plaintiffs also allege that Shellpoint misrepresented the amount due in the statements it sent to plaintiffs between 2017 and 2018. They claim that Shellpoint was negligent in making demands based upon terms different from those in the original promissory note and in onboarding the Loan without confirming the validity of its terms. Id. at ¶¶ 47-51.

Fourth, plaintiffs assert that Shellpoint and BONY violated Washington's Consumer Protection Act ("CPA"). See RCW 19.86 et seq. Plaintiffs allege that Shellpoint and BONY knew or should have known that the foreclosure on the Property was time-barred. Id. at ¶¶ 54-56. They also contend that defendants failed to acknowledge the inconsistency regarding the ownership of the Loan before commencing foreclosure, thus violating the Deed of Trust Act. Id. at ¶57. They allege that defendants failed to investigate the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. They claim that defendants "dual-tracked" the Loan, engaging plaintiffs in loss mitigation while simultaneously referring them to foreclosure. Id. at ¶59. Finally, they allege that defendants failed to explain the terms of the Loan in statements issued between 2015 and 2018 so as to enable plaintiffs to cure the default. Id. at ¶60.

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 4

# DISCUSSION

A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks and ellipses omitted); see Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 556). There must be more than a sheer possibility that a defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 556). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**A. Plaintiffs' Quiet Title Claim**

"An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination." Kobza v. Tripp, 105 Wn. App. 90, 95 (2001); see RCW 7.28.10.

Plaintiffs do not allege that they have paid off their outstanding debt and are the rightful owners of the Property. Niborg v. CitiMortgage, Inc., No. C17-5155 BHS, 2017 WL 2119448, at *2 (W.D. Wn. May 16, 2017) (citing Young v. Quality Loan Serv. Corp., C14-1713RSL, 2015 WL 12559901, at *1 (W.D. Wash. July 7, 2015)); Evans v. BAC Home Loans Servicing LP, No. C10-0656 RSM, 2010 WL 5138394, at *3 (W.D. Wash. Dec. 10, 2010) ("Plaintiffs cannot assert an action to quiet title against a purported lender without demonstrating they have

satisfied their obligations under the Deed of Trust."). However, a "record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations." Jarvis v. Fed. Nat'l Mortg. Ass'n, No. C16-5194-RBL, 2017 WL 1438040, at *4 (W.D. Wash. Apr. 24, 2017), aff'd, 726 F. App'x 666 (9th Cir. 2018) (quoting RCW 7.28.300 (1998)); Dkt. #41 at 1-2. The Court must therefore determine if the foreclosure was time-barred.

The statute of limitations on the enforcement of a promissory note is six years. Bingham v. Lechner, 111 Wn. App. 118, 127 (2002). For installment contracts like the one at issue here, "each installment triggers the limitations period for that missed payment." Jarvis, 2017 WL 1438040 at *2. "The last payment owed commences the final six-year period to enforce a deed of trust securing a loan. This situation occurs when the final payment becomes due, such as when the note matures or a lender unequivocally accelerates the note's maturation. Id. (citing 4518 S. 256th, LLC v. Karen L. Gibbon, P.S., 195 Wn. App. 423, 434-35 (2016), review denied sub nom. 4518 S. 256th, LLC v. Gibbon, 187 Wn.2d 1003 (2017)). Plaintiffs claim that BANA "unequivocally accelerated the debt via its Notice of Intent to Accelerate" on November 2, 2011. Dkt. #3 at ¶30. That Notice stated that the Loan was in default, but that plaintiffs could cure the default by paying an amount of $4,670.02 on or before December 2, 2011. *If* plaintiffs failed to do so, the Loan would be accelerated with the full amount remaining becoming due and payable. Ex. E, Dkt. #21-1 at 31-32. BANA therefore did not "take an affirmative action that indicated that the payments on the [L]oan had been accelerated." Erickson v. Am.'s Wholesale Lender, No. 77742-4-I, 2018 WL 1792382, at *3 (Wn. Ct. App. Apr. 16, 2018), review denied, 191 Wn. 2d 1024 (2018). It "neither declared the entire debt due nor refused to accept installment payments." Id. It simply "informed [plaintiffs] of a future contingent event." Id. The Notice thus did not trigger the statute of limitations,[5] and on the record as it stands, it is not clear what did

---

[5] Shellpoint and BONY also argued that the statute of limitations was tolled between March 13, 2013, when the first Notice of Trustee's Sale was issued, and July 12, 2013, the date of the sale set therein. Dkt. #31 at 5-6. Plaintiffs argue that the statute was only tolled between March 13, 2013 and

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 6

so. Id. Plaintiffs have failed to plead facts showing that defendants attempted to foreclose on a time-barred debt and have therefore failed to make out a plausible quiet title claim.

### B. Plaintiffs' FDCPA Claim

Plaintiffs' FDCPA claim is based on the allegation that Shellpoint initiated foreclosure proceedings on a time-barred debt. Dkt. #3 at ¶31. As previously discussed, plaintiffs have not pleaded facts indicating when the statute of limitations began to run. The allegation that it began to run on BANA's issuance of the Notice of Intent to Accelerate is not borne out by the law. See Erickson, 2018 WL 1792382 at *3; Ashcroft, 556 U.S. at 678 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Plaintiffs have therefore failed to make out a plausible FDCPA claim.

### C. Plaintiffs' Negligent Misrepresentation Claim

A negligent representation claim has six elements: (1) the defendant supplied false information that guided the plaintiff's business transaction, (2) the defendant knew or should have known that the information was offered to advise the plaintiff's business transaction, (3) the defendant obtained or communicated the false information negligently, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff's damages. Childs v. Microsoft Corp., No. C10-1916RAJ, 2011 WL 6330141, at *5 (W.D. Wash. Dec. 16, 2011), aff'd, 489 F. App'x 224 (9th Cir. 2012) (citing Ross v. Kirner, 162 Wn.2d 493, 499 (2007) (en banc)).

Plaintiffs claim that Shellpoint committed negligent misrepresentation in three ways. First, they allege that Shellpoint issued a Validation of Debt Notice on December 8, 2016 stating that BANA was the creditor to whom plaintiffs owed the debt. Ex. O, Dkt. #21-2 at 23-24. It then issued another Validation of Debt Notice on January 18, 2017, stating that the Loan was owned by BONY. Ex. P, Dkt. #21-2 at 26-27. Yet neither BANA nor BONY actually owned the

---

May 17, 2013, the date of the Notice of Discontinuance of Trustee's Sale. Dkt. #38 at 3-4. Given the lack of clarity regarding when the statute began to run, the Court need not reach this issue.

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 7

Loan. Dkt. #3 at ¶46. Second, they allege that Shellpoint sent them periodic statements between 2017 and 2018 that contained misrepresentations regarding the amounts due. Id. at ¶47. Third, they allege that Shellpoint was negligent in onboarding the Loan without verifying whether the terms were valid and in making demands based upon interest rates that differed from those in the original promissory note. Id. at ¶48.

Shellpoint argues that plaintiffs have not detailed what acts they engaged in or refrained from based on Shellpoint's statements. Dkt. #31 at 7. Rather, plaintiffs had defaulted on their Loan in 2011, years before Shellpoint began servicing the Loan in 2016. Id. However, plaintiffs did allege in the FAC that they relied upon Shellpoint's statements. Dkt. #3 at ¶48. They alleged that they did not make payments on the Loan because of the discrepancies between the terms listed in Shellpoint's statements and those of the original agreement. Id. They alleged that Shellpoint's misrepresentations prevented them from understanding their payment obligations and caused them to *continue* to default on the Loan. Id. at ¶¶ 48, 50-51. This led to the Loan remaining in a state of default. Id. Accepting plaintiffs' allegations as true, see Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), it is plausible that Shellpoint's communications contained false information that caused plaintiffs to continue to default on their Loan as they were unsure of their payment obligations going forward. Plaintiffs have sufficiently stated their claim.

### D. Plaintiffs' CPA Claim

To prevail on a private claim under Washington's CPA, a plaintiff must prove "(1) [an] unfair or deceptive act or practice (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 780 (1986). A plaintiff may predicate the first element on "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Hard 2 Find Accessories, Inc. v. Amazon.com, Inc., 58 F. Supp. 3d 1166, 1175 (W.D. Wash. 2014), aff'd sub nom. Hard2Find Accessories, Inc. v.

ORDER GRANTING IN PART SHELLPOINT AND
BONY'S MOTION TO DISMISS - 8

Amazon.com, Inc., 691 F. App'x 406 (9th Cir. 2017) (quoting Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013)). "As a general matter, the CPA is to be "liberally construed that its beneficial purposes may be served."" Meyer v. U.S. Bank Nat. Ass'n, 530 B.R. 767, 776 (W.D. Wash. 2015), aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc., 712 F. App'x 619 (9th Cir. 2017) (quoting RCW 19.86.920).

Plaintiffs put forth several bases for their CPA claim. They first allege that Shellpoint and BONY knew or should have known that the foreclosure on the Property was time-barred. Id. at ¶¶ 54-56. However, as previously discussed, plaintiffs have not pleaded facts showing when the statute of limitations began to run. Erickson, 2018 WL 1792382 at *3. Plaintiffs next allege that defendants violated the Deed of Trust Act because they did not acknowledge or investigate the competing claims of BANA and BONY regarding the ownership of the Loan prior to commencing foreclosure. Id. at ¶57. This bald assertion is not sufficient to give rise to a cause of action under the CPA. Plaintiffs then allege that defendants failed to investigate the Assignments of Deed of Trust and Appointment of Successor Trustee. Id. at ¶58. But they do not plead facts showing that any failure to investigate was an unfair act or practice. They next claim that defendants "dual-tracked" the Loan. Id. at ¶59. However, "dual tracking" is not inherently an unfair or deceptive practice, and plaintiffs plead no facts to show why it was so in their case. See Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 333 (2016). Finally, they allege that defendants failed to explain the terms of the Loan in statements issued between 2015 and 2018 so as to enable plaintiffs to cure the default. Id. at ¶60. But they have not alleged that Shellpoint or BONY failed to respond to any inquiries or that they had an affirmative duty to set out these terms. Plaintiffs have failed to make out a plausible CPA claim.

For all the foregoing reasons, Shellpoint and BONY's motion is GRANTED IN PART. It is hereby ORDERED that plaintiffs' quiet title claim (Count One), FDCPA claim (Count Two) and CPA claim (Count Seven) as against Shellpoint and BONY are DISMISSED.

1     DATED this 15th day of March, 2019.

*signature*
Robert S. Lasnik
United States District Judge