UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY PIFER, at al.,

   Plaintiffs,

  v.

BANK OF AMERICA, N.A., et al.,

   Defendants.

Case No. 2:18-CV-606-RSL

ORDER DENYING SPECIALIZED LOAN SERVICING LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

This matter comes before the Court on defendant Specialized Loan Servicing's ("SLS") motion for judgment on the pleadings. Dkt. #54.

## **BACKGROUND**

The Court has previously laid out the facts and allegations of this case, see Dkts. #44–46, and will not recite them here in depth. To summarize, in May 2007, plaintiffs Larry and Pamela Pifer obtained a loan of $393,750 from Countrywide Home Loans Inc. dba America's Wholesale Lender ("AWL"), with interest in the amount of 7.6% ("the Loan"). Ex. C, Dkt. #21-2 at 18–22. This was secured by a Deed of Trust dated May 7, 2007. Ex. A, Dkt. #21-1 at 2–3. On July 5, 2011, Bank of America ("BANA")[1] sent plaintiffs a letter with a proposed Loan Modification Agreement ("LMA"). Ex. D, Dkt. #21-2 at 24–29. BANA listed an unpaid principal amount of $434,710.30 and a new interest rate of 2%. Id. at 24. It stated that the

---

[1] Following a mediation, plaintiffs' claims against BANA were dismissed with prejudice. See Dkts. #69–70.

ORDER DENYING SPECIALIZED LOAN SERVICING'S
MOTION FOR JUDGMENT ON THE PLEADINGS - 1

interest rate would increase to 3% in the fourth year, 4% in the fifth year and 4.875% in the sixth year. Id. BANA stated that the LMA "[would] not be binding or effective unless and until it [had] been signed by both [plaintiffs] and [BANA]." Id. Plaintiffs signed the LMA and made some payments pursuant to it, but they did not receive a copy of the fully executed LMA from BANA. Dkt. #3 (First Amended Complaint ("FAC")) at ¶ 12. They eventually stopped making payments after September 2011. Id. at ¶ 54. In 2013, the Loan was transferred to SLS for servicing. Id. at ¶ 23.

SLS issued its first mortgage statement to plaintiffs on January 20, 2014. This reflected an outstanding principal of $432,572.88. Ex. J, Dkt. #21-1 at 46. Plaintiffs allege that this amount was "inexplicably less than the new principal stated on BANA's [LMA]." SLS's statements also showed interest rates of 3% and 4%. FAC at ¶ 18. The interest rate increased to 4.875% in August 2016 "without any notice or explanation to [plaintiffs] for the increase." Id. at ¶ 19. SLS continued to issue statements between January 20, 2014 and November 18, 2016. Ex. J, Dkt. #21-1 at 46–68; Ex. K, Dkt. #21-2 at 1–13. In 2016, the Loan was transferred again, to Shellpoint Mortgage Servicing. FAC at ¶ 23.

Plaintiff brought three causes of action against SLS. Two of these were dismissed. See Dkt. #45. All that remains is plaintiffs' claim for negligent misrepresentation. SLS now seeks dismissal of that claim pursuant to Federal Rule of Civil Procedure 12(c).

## DISCUSSION

**A. Legal Standard**

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim." Dacumos v. Toyota Motor Credit Corp., 287 F. Supp. 3d 1152, 1154 (W.D. Wash. 2017) (citing Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)). The Court accepts "as true all material facts alleged in the pleadings and draw[s] all reasonable inferences in favor of the nonmoving party." Id. (citing

Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. (quoting Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). There must be more than a sheer possibility that a defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 556).

### B. Plaintiffs' Claim of Negligent Misrepresentation

A negligent misrepresentation claim has six elements: (1) the defendant supplied false information that guided the plaintiff's business transaction, (2) the defendant knew or should have known that the information was offered to advise the plaintiff's business transaction, (3) the defendant obtained or communicated the false information negligently, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff's damages. Childs v. Microsoft Corp., No. C10-1916RAJ, 2011 WL 6330141, at *5 (W.D. Wash. Dec. 16, 2011), aff'd, 489 F. App'x 224 (9th Cir. 2012) (citing Ross v. Kirner, 162 Wn.2d 493, 499 (2007) (en banc)). Plaintiffs claim that SLS committed negligent misrepresentation in making demands for payments based on interest rates consistent with the terms of the LMA rather than the original promissory note without specifying the basis for the amounts. FAC at ¶¶ 40–41, 43–45.

First, SLS argues that part of plaintiffs' claim is time-barred. "Claims for negligent misrepresentation are subject to the three[-]year statute of limitations for fraud under RCW 4.16.080(4)." Davidheiser v. Pierce Cty., 92 Wn. App. 146, 156 (1998) (citing Western Lumber, Inc. v. City of Aberdeen, 10 Wn. App. 325, 327 (1973)). "The cause of action must be commenced within three years of discovery of the misrepresentation." Id. (internal citation

ORDER DENYING SPECIALIZED LOAN SERVICING'S
MOTION FOR JUDGMENT ON THE PLEADINGS - 3

omitted). Plaintiffs commenced this action on April 25, 2018. Dkt. #1. SLS contends that plaintiffs cannot pursue a negligent misrepresentation claim for the statements dated January 20, 2014 to April 20, 2015. Dkt. #54 at 5. "[T]he statute of limitations does not begin to run until a plaintiff discovers or reasonably could have discovered all the essential elements of the cause of action." Putz v. Golden, 847 F. Supp. 2d 1273, 1281 (W.D. Wash. 2012) (internal citation omitted). SLS argues that plaintiffs could reasonably have discovered their cause of action at the time of the first statement on January 20, 2014. Dkt. #54 at 6. Plaintiffs do not appear to deny this, see Dkt. #57 at 5–6, and the Court agrees.

Rather, plaintiffs argue that SLS has committed a continuing tort that is not time-barred. Id.; see Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) ("When a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends.") (citing Page v. United States, 729 F.2d 818, 821 (D.C. Cir. 1984)). The continuing tort doctrine "applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" Id. (quoting Page, 729 F.2d at 821–22). SLS responds that Washington law has not recognized the continuing tort doctrine for a negligent misrepresentation claim. Dkt. #59 at 3. The Court cannot locate any case in which the doctrine has been so applied. SLS's statements are not an "ongoing [allegedly] negligent act," but several acts. McCoy v. Foss Mar. Co., No. C04-2233L, 2006 WL 829109, at *2 (W.D. Wash. Mar. 24, 2006); see Diamond Concrete, LLC v. Pac. Nw. Reg'l Council of Carpenters, No. C11-5360BHS, 2011 WL 3206906, at *2 (W.D. Wash. July 26, 2011) ("[T]he [Supreme Court of Washington] did not apply the doctrine of continuing torts to include five articles previously published notwithstanding the fact that a sixth article containing identical misstatements was published within the statute of limitations period and, therefore, not barred.") (citing LaMon v. Butler, 112 Wn. 2d 193, 196–97 (1989)). Plaintiffs' claim is time-barred with regard to statements prior to April 25, 2015.

Second, SLS argues that plaintiffs' own negligence bars their claim. SLS is correct in that "[t]he recipient of a negligent misrepresentation is barred from recovery for pecuniary loss

ORDER DENYING SPECIALIZED LOAN SERVICING'S
MOTION FOR JUDGMENT ON THE PLEADINGS - 4

suffered in reliance upon it if he is negligent in so relying." ESCA Corp. v. KPMG Peat Marwick, 135 Wn. 2d 820, 827 (1998) (internal citation omitted). SLS argues that a reasonable person would have paid the amount requested on the statements, saved it, and/or contacted SLS to clarify their payment obligations instead of ceasing to make any payments at all. Dkt. #54 at 6. That may well be; however, it cannot bar plaintiffs' claim at this early stage. See Bye v. Augmenix, Inc., No. C18-1279-JCC, 2018 WL 5619029, at *5 (W.D. Wash. Oct. 30, 2018) (finding that defendant's argument "would [have] require[d] the Court to make factual distinctions that [were] not proper at this stage of the proceeding" and was "better suited for summary judgment."). SLS appears to blur the distinction between justifiable reliance and contributory negligence. See Dkt. #54 at 6 ("Simply not paying the monthly payment and not attempting to clear up the alleged confusion with the current servicer is not reasonable under the circumstances and is in fact negligent."). SLS does not seem to be arguing—nor could it—that plaintiffs were unjustified in *relying* on SLS's periodic statements, as SLS was the servicer of their Loan at the time. Whether they *acted* negligently or reasonably based on those statements is a matter of contributory negligence and remains to be seen. ESCA Corp., 135 Wn. 2d at 828 (finding that the defendant "confuse[d] the issues of justifiable reliance (the right to recover) with damage (the proper amount of recovery)").

Third, SLS argues that plaintiffs have not plausibly alleged that they could have but did not cure the default as a result of SLS's communications. Dkt. #54 at 6. However, plaintiffs have stated that had any of the defendants explained that the LMA was valid and binding, they "could have made payments under the terms of the [LMA] to prevent [the] default and eventual loss of their home." FAC at ¶ 28. They specifically stated that they "relied upon the periodic statements issued by SLS to their detriment; they could not pay the amounts demanded by SLS because of the discrepancies between the original terms of the Loan and what [was] represented by SLS'[s] periodic statements." Id. at ¶ 43. They have also alleged that they "[had] no option[s] but [to] rely on the information produced by SLS to cure any default and to save their home from foreclosure." Id. at ¶ 41. At this stage, plaintiffs' assertions are sufficient. See Bye, 2018 WL

ORDER DENYING SPECIALIZED LOAN SERVICING'S
MOTION FOR JUDGMENT ON THE PLEADINGS - 5

5619029 at *5. The same is true of their allegations regarding their damages and whether or not SLS obtained the information on which it based its statements negligently. Dkt. #54 at 7–8; see FAC at ¶¶ 43–45.

## CONCLUSION

For all the foregoing reasons, SLS' motion is DENIED.

DATED this 27th day of August, 2019.

Robert S. Lasnik
United States District Judge

ORDER DENYING SPECIALIZED LOAN SERVICING'S
MOTION FOR JUDGMENT ON THE PLEADINGS - 6