UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY PIFER, at al.,

    Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

    Defendants.

Case No. 2:18-CV-606-RSL

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS SUBMITTED BY DEFENDANT NEW PENN FINANCIAL

This matter comes before the Court on defendant New Penn Financial, LLC dba Shellpoint Mortgage Servicing's ("Shellpoint") motion for judgment on the pleadings. Dkt. #56.

## BACKGROUND

The Court has previously laid out the facts and allegations of this case, see Dkts. #44–46, and will not recite them here in depth. To summarize, in May 2007, plaintiffs Larry and Pamela Pifer obtained a loan of $393,750 from Countrywide Home Loans Inc. dba America's Wholesale Lender ("AWL"), with interest in the amount of 7.6% ("the Loan"). Ex. C, Dkt. #21-2 at 18–22. This was secured by a Deed of Trust dated May 7, 2007. Ex. A, Dkt. #21-1 at 2–3. On July 5, 2011, Bank of America ("BANA")[1] sent plaintiffs a letter with a proposed Loan Modification Agreement ("LMA"). Ex. D, Dkt. #21-2 at 24–29. BANA listed an unpaid principal amount of $434,710.30 and a new interest rate of 2%. Id. at 24. It stated that the

---

[1] Following a mediation, plaintiffs' claims against BANA were dismissed with prejudice. See Dkts. #69–70.

ORDER DENYING SHELLPOINT'S MOTION
FOR JUDGMENT ON THE PLEADINGS - 1

interest rate would increase to 3% in the fourth year, 4% in the fifth year and 4.875% in the sixth year. Id. BANA stated that the LMA "[would] not be binding or effective unless and until it [had] been signed by both [plaintiffs] and [BANA]." Id. Plaintiffs signed the LMA and made some payments pursuant to it, but they did not receive a copy of the fully executed LMA from BANA. Dkt. #3 (First Amended Complaint ("FAC")) at ¶ 12. They eventually stopped making payments after September 2011. Id. at ¶ 54. In 2016, the Loan was transferred to Shellpoint for servicing. Id. at ¶ 23.

Shellpoint sent a Validation of Debt Notice to plaintiffs on December 8, 2016. Ex. O, Dkt. #21-2 at 23–24. This Notice stated that plaintiffs owed a debt of $143,810.10 and identified BANA as the creditor to whom the debt was owed. Id. On January 18, 2017, Shellpoint sent a second Validation of Debt Notice to plaintiffs. Ex. P, Dkt. #21-2 at 26–27. It stated that the Loan had been updated to a "Cease & Desist" and that the purpose of the Notice was to respond to plaintiffs' inquiry. It stated that the owner of the Loan was The Bank of New York As Trustee for The Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-8 ("BONY"). It listed a principal balance of $432,572.88 and an interest rate of 2.000%. Id. Shellpoint also issued statements to plaintiffs between December 21, 2016 and April 18, 2018. Ex. Q, Dkt. #21-2 at 30–47. These all listed an interest rate of 4.8750%. Id. On February 15 and February 21, 2018, Shellpoint responded to inquiries from plaintiffs and informed them that BONY was the owner of their Loan. Ex. R, Dkt. #21-2 at 49–50. At some point, Shellpoint referred the Loan for foreclosure by its agent, North Star Trustee. Dkt. #3 at ¶27. A Notice of Trustee's Sale was issued on January 17, 2018, setting a foreclosure sale for May 18, 2018. Ex. S, Dkt. #21-2 at 52–55.[2]

Plaintiff brought four causes of action against Shellpoint. Three of these were dismissed. Dkt. #46. All that remains is plaintiffs' claim for negligent misrepresentation. Shellpoint now seeks dismissal of that claim pursuant to Federal Rule of Civil Procedure 12(c).

---

[2] It is not clear whether the foreclosure sale has taken place. In their response, plaintiffs refer only to an "impending foreclosure sale." Dkt. #58 at 2.

ORDER DENYING SHELLPOINT'S MOTION
FOR JUDGMENT ON THE PLEADINGS - 2

# DISCUSSION

### A. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim." Dacumos v. Toyota Motor Credit Corp., 287 F. Supp. 3d 1152, 1154 (W.D. Wash. 2017) (citing Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)). The Court accepts "as true all material facts alleged in the pleadings and draw[s] all reasonable inferences in favor of the nonmoving party." Id. (citing Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. (quoting Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). There must be more than a sheer possibility that a defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 556).

### B. Plaintiffs' Claim of Negligent Misrepresentation

A negligent misrepresentation claim has six elements: (1) the defendant supplied false information that guided the plaintiff's business transaction, (2) the defendant knew or should have known that the information was offered to advise the plaintiff's business transaction, (3) the defendant obtained or communicated the false information negligently, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff's damages. Childs v. Microsoft Corp., No. C10-1916RAJ, 2011 WL 6330141, at *5 (W.D. Wash. Dec. 16, 2011), aff'd, 489 F. App'x 224 (9th Cir. 2012) (citing Ross v. Kirner, 162 Wn.2d 493, 499 (2007) (en banc)).

Plaintiffs base their claim of negligent misrepresentation on three grounds. First, Shellpoint issued contradictory Validation of Debt Notices on December 8, 2016 and January 18, 2017. One stated that BANA was the creditor to whom plaintiffs owed the debt, although BONY owned it at the time. Ex. O, Dkt. #21-1 at 23–24; see Dkt. #56 at 5. The other stated that BONY owned the Loan. Ex. P, Dkt. #21-23 at 26–27. Second, Shellpoint sent plaintiffs periodic statements between 2017 and 2018 that contained misrepresentations regarding the amounts due. FAC at ¶ 47; Ex. Q, Dkt. #21-2 at 30–47. Third, Shellpoint was negligent in onboarding the Loan without verifying whether the terms were valid and in making demands based upon interest rates that differed from those in the original promissory note. Id. at ¶ 48.

Shellpoint contends that plaintiffs have not alleged that they detrimentally relied on the Validation of Debt Notices. Dkt. #56 at 5. It also argues that any confusion regarding who owned the Loan should not have led plaintiffs to stop making payments on their Loan altogether. Id. at 5–6. However, plaintiffs have alleged that Shellpoint "committed negligent misrepresentation" by issuing contradictory Validation of Debt Notices, FAC at ¶ 46, and that Shellpoint's negligent misrepresentations caused them to default on the Loan. Id. at ¶ 51. They have also stated that they received many contradictory communications from all the defendants and were unclear on their payment obligations in the absence of an executed LMA from BANA. Id. at ¶¶ 17, 22; see Exs. D, E, G–I, Dkt. #21-1. This was compounded by the fact that Shellpoint's statements reflected the terms of the LMA instead of the original agreement with BANA. FAC at ¶ 48. Furthermore, while Shellpoint's statements referred to an interest rate of 4.8750%, its second Validation of Debt Notice referred to an interest rate of 2.000%. In context, plaintiffs' confusion and consequent action is plausible. Ashcroft, 556 U.S. at 678.

Regardless, plaintiffs have certainly alleged that they detrimentally relied on the periodic statements issued by Shellpoint. FAC at ¶ 48. Shellpoint argues that plaintiffs have not alleged that they could have but did not cure the default as a result of Shellpoint's communications. Id. at 6. However, plaintiffs have stated that had any of the defendants explained that the LMA was valid and binding, they "could have made payments under the terms of the [LMA] to prevent

[the] default and eventual loss of their home." FAC at ¶ 28. They specifically stated that they "relied upon the periodic statements issued by Shellpoint to their detriment as they could not pay the amounts demanded by Shellpoint because of the discrepancies between the original terms of the Loan and what [was] represented by Shellpoint's periodic statements." Id. at ¶ 48. They have also alleged that they "[had] no option but [to] rely on the information produced by Shellpoint" and that the confusion caused by Shellpoint's communications led to their defaulting on the Loan. Id. at ¶¶ 50–51. In that context, and at this stage, plaintiffs' assertions are sufficient. See Bye v. Augmenix, Inc., No. C18-1279-JCC, 2018 WL 5619029, at *5 (W.D. Wash. Oct. 30, 2018) (finding that defendant's argument "would [have] require[d] the Court to make factual distinctions that [were] not proper at this stage of the proceeding" and was "better suited for summary judgment."). The same is true of plaintiffs' allegations regarding their damages and whether or not Shellpoint obtained the information on which it based its statements negligently. Dkt. #56 at 7–8; see FAC at ¶¶ 48, 50–51.

Similarly, any negligence by plaintiffs in their reliance does not bar their claim at this point. Shellpoint is correct in that "[t]he recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." ESCA Corp. v. KPMG Peat Marwick, 135 Wn. 2d 820, 827 (1998) (internal citation omitted). Shellpoint argues that a reasonable person would have paid the amount requested on the statements, placed the amount in a savings account, or called Shellpoint (rather than BANA) to clarify their payment obligations instead of ceasing to make any payments at all. Dkt. #56 at 6. That may well be; however, it cannot bar plaintiffs' claim at this early stage. See Bye, 2018 WL 5619029 at *5. Shellpoint appears to blur the distinction between justifiable reliance and contributory negligence. See Dkt. #60 at 5 ("Because a reasonable person, when confronted with a mortgage statement that caused confusion, would not have simply stopped paying the mortgage, Plaintiffs acted negligently in so relying on Shellpoint's statements."). Certainly, Shellpoint does not appear to be arguing—nor could it—that plaintiffs were unjustified in *relying* on Shellpoint's periodic statements, as Shellpoint was the servicer of their Loan.

ORDER DENYING SHELLPOINT'S MOTION
FOR JUDGMENT ON THE PLEADINGS - 5

Whether they *acted* negligently or reasonably based on those statements is a matter of contributory negligence and remains to be seen. ESCA Corp., 135 Wn. 2d at 828 (finding that the defendant "confuse[d] the issues of justifiable reliance (the right to recover) with damage (the proper amount of recovery)").

## CONCLUSION

For all the foregoing reasons, Shellpoint's motion is DENIED.

DATED this 27th day of August, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge